All rise. Hear ye, hear ye, hear ye, this Honorable Appellate Court of the 2nd District. It is hereby open for pursuit to adjournment. The Honorable and Recommended Court is adjourned. Please be seated. Your Honor, this is the first case of the morning. Call 2-11-721. Jillian Jacobson at Office Gary King, Dan Rothenberg, and Lisa Mangan. On behalf of the Appellant, Mr. Kenneth Goldstein. On behalf of the Appellees, the Solicitor General, Michael Stoker. Gentlemen, are you both ready to proceed? Yes. Okay. Before we get started with the argument, there was a motion to strike which was filed. I want to make a record that we were intent to deny that motion. However, we will disregard any portion of that paragraph which is inappropriate. Are you ready to proceed? Yes. Good morning, Your Honor. I'm Ken Goldstein on behalf of the Plaintiff, Appellant, and the proposed class. I appreciate you granting oral argument on this matter as well. We're here because there's a fund to reverse the circuit court on a fundamental error. The lower court avoided the controlling holding in Crocker and Boynton Supreme Court decisions that held that there was no relationship between domestic violence services and issuing a marriage license, which was in Boynton, or in proceeding with a filing fee, filing a divorce in Crocker, as being too remote and failing under the rational relationship test, and then also, by necessity, then also failing under the strict scrutiny analysis. So the fundamental here is that there's no rational relationship between the test. There's no rational relationship between the services and the fee. This is a direct tax and a direct tax and a direct impediment on receiving a marriage license, and it's overreaching by the state, which should fund this program properly. We have no quarrel with the program. This should be a priority for the state, and they should fund it through general tax revenues, but not as a user tax, as a direct impediment and as a user tax on people who are looking to get married. They have to file. There's no waiver. They can't avoid this fee, and they have to pay it, so it's a direct impediment. This is the third time, essentially, that the state has tried to fix this problem. But in the new public law in June of 2008, Law 95-711, didn't they narrow it to give us the opportunity to distinguish Blanton, and in that law it was all citizens, all citizens who were victims of domestic violence, and in this case now we have only people who are married, so it's narrowed, has it not? Yes, the means have been narrowed. The program in those first two cases were all married or formally married. It was actually anybody who was entitled to these services, and now it's been narrowed to married and formally married. The problem with that narrowing is that they're fixing the wrong part of the problem. The problem in the rational basis test is the first half of the test, which there has to be a connection. Under the rational basis test, it needs to be a rational connection to a legitimate state interest, and the Supreme Court in that case held that there was none. That was the decision in Crocker, and then it was affirmed in Boynton, and then more recently in Erringal, that holding was again established, stated, affirmed, and so when they narrowed it, Your Honor, to married and formally married, they've tinkered at the edges and they've tinkered at the wrong spot. They could fix this by allowing domestic violence services for all people. Well, that's what the prior bill did for all people, and then it was struck down as unconstitutional. No, but the problem was that the first half of it was that there was no connection. The rational basis test has two parts, and as the strict scrutiny test has two parts, there has to be a rational basis, and then the means have to be under strict scrutiny, narrowly tailored, or under the rational basis that they need to be legitimate, reasonable. It's very deferential. Almost anything that they do would be okay, but when it fails even the connection of that first part of the test, that's why the change doesn't make any difference. That change is not material to the statute. It doesn't save it at all, and the rational basis test with the connection, the nexus between connecting domestic violence services to issuing a marriage license runs through the rational basis test, the strict scrutiny test, and the uniformity clause, which requires that there be a connection of the court held... I mean, how is there not a nexus when you talk about marriage and domestic battery, or the end means, which the legislature is trying to preclude or trying to assist people who enter into a relationship, and then it becomes volatile and there's domestic violence. How is it unreasonable for the state to want to help individuals who are placed in that situation? Sure. Because if there's no connection, the purpose of marriage is not related to domestic violence. Domestic violence comes up unfortunately in marriage, but it also comes up in other relationships of non-marriage, and it's not a product of marriage. But that's outside now the scope of what this fund is designed for. The fund is designed to help only those persons who are married escape or remove themselves from an abusive marriage. Isn't that pretty limited and pretty tailored? Well, it isn't only, Your Honor, just related to escape of marriage. It also has non-marriage, marriage-neutral elements to it. It's a social welfare program. It includes retaining orders of protection, custody issues, visitation issues. I think the orders of protection, though, clearly is a marriage-neutral issue that is not related. Well, you could get an order of protection even though you're married. Yes, you could, but if you're not married, you may if you're in a domestic violence service. It does not limit orders of protection to or assistance for obtaining an order of protection to those persons that are married. I'm sorry. In the statute, the fund that's at issue here, it is your position then that that fund is available to anyone to obtain an order of protection or only someone who's married? Thank you. Just married or formerly married. Then why isn't that as narrowly tailored as it could possibly be? On that issue, it may be tailored, but to reach the tailoring, you also need the other element. And to your other question, why can't they find that compelling interest or a rational basis, they're not connected because it's a social welfare program. The Boynton Court and the Crocker Court talked about if you found that the connection between these two items, domestic violence and a marriage license or a divorce, you would be opening the door to many other things like counseling programs subject to marriage, our children, and education. So maybe education costs could be defrayed by putting a tax on marriage. The Boynton Court talks about delinquent children and neglected children. You could defray costs for those programs. You could defray costs for juvenile probation costs because the children are a product of marriage. There's all sorts of other costs that could be initiated. But how does that make it wrong unless, of course, there is no rational basis or connection? But if there is a rational basis or connection, we could foreseeably see a license that costs $1,000. Well, that's exactly the problem. No, that's not a problem because I used to say when I used to prosecute orders of protection and paternity and non-support, that people should not be allowed to get married until age 35 unless they have the written consent of their children. And so it's very easy to buy a license and get married. It's very expensive to get divorced. And maybe we should load it on the front side to cover for all the downstream liabilities and costs and expenses, injuries and damages, et cetera, that might not occur if these people weren't either married or living together. So I accept your argument that the price of the license may go up, but I'm having a hard time buying the argument that just because the price of the license might be high in relation to what it is presently, as long as those things that are related to the marriage that are either deemed to be a benefit or a burden, which either they're attempting to minimize or maximize to encourage or prevent, I don't see how it's unconstitutional. Sure. The issue, the circuit court ruled that the fee triggered strict scrutiny. Because this is a direct tax on marriage, it's a direct impediment on a fundamental right. So in reality, it needs to be reached, it has to be a compelling interest, and it has to be both a compelling interest and narrowly tailored, which is not the rational basis test. However, the rash on Boynton and Crocker defeated this similar program on a rational basis test, saying that it didn't even meet, it didn't, wasn't, there was no nexus between issuing a marriage license and domestic violence. Domestic violence isn't a product of marriage. And on that rational basis test, it failed. The circuit court here agreed that the fee, even a $5 fee, was an impediment, direct impediment, and triggered the strict scrutiny test. How does the $5 nominal fee directly or substantially impede the fundamental constitutional right to marry? Because it's the principle of a fee. That fee could be $5. It's the principle of enacting a fee. Then a legislature could raise that fee to any amount. Some people may raise it to a very high amount. But wouldn't we have a different, wouldn't we be in a different position if you were standing before us today saying, hey, you're going to make my client pay $1,000, or they made my client pay $1,000 to get married, as opposed to standing here saying my client had to pay $5 to get married. Because one of the tests is does it directly or substantially impede the fundamental right, in this case, to marry. Yes, it does, Your Honor, because you have to. So it's a different story if you have $1,000, if you tax them $1,000 versus $5. I don't think so. It could be a penny or a dollar. The $35 fee to get married is for licensing, for record keeping. And I believe that it's been raised while this case has been pending. But the additional $5 fee going to the segregated fund is the impediment. It's not waivable. You couldn't, it's punishable in Illinois to get married without a marriage license. You can't avoid it by going to a different county. It's the principle of having a fee imposed just for this one purpose, outside of record keeping or keeping the records of marriage licenses or regulating marriage by having a fee in that way. Procedurally, your client didn't pay this under protest. She did not. So how do you have standing to represent the class? She, under the voluntary payment doctrine, she would be under duress had she not paid the fee. It's a fundamental right to get married, and it would fall under the duress exception as a necessity, under, I believe it's Gary versus Dominick's. The matter comes back down to the circuit court saw that it was precluded under the rational basis test and precluded under Procter, Boynton, and Arongold, and then ruled that the strict scrutiny would apply and was triggered, but then thought that we can find a compelling interest in providing these services. When the court said that there was a compelling interest to provide these services, and I'm not talking about the means, just the goal or the desire, the legitimate state interest now being a compelling or necessary state interest. Well, the problem is that strict scrutiny, the levels of scrutiny are tiered, and they incorporate one another. So a rational basis, legitimate interest becomes an intermediate scrutiny, becomes a substantial interest. And strict scrutiny, the level gets ratcheted up again, and the presumption of constitutionality, and the presumptions fall away, and the court needs to take a much closer look. I think, unfortunately, the court wanted to find, had the desire to find this constitutional because it's laudatory, and we're not against the program. Your Honor, may I just finish my thought? Yes. Thank you. Thank you. And avoided the strict scrutiny test by saying that providing these services served a compelling interest when the precedent was that it does not meet, doesn't even meet the rational basis test, and it's been, it was a controlling decision on those three cases that you've mentioned. Is the fact that you're married affected the presentation today? No, Your Honor. You don't have a conflict of interest. I don't. I don't have a, I don't, I'm sorry, I didn't know. I know, I mean, I feel very seriously that, you know, we're not cold-hearted. You know, we think that this program is an important program. However, it shouldn't be a tax revenue source where the legislature is avoiding paying general revenue taxes to fund a necessary program or an important program. They should pay for it out of the, it's out of the general tax revenues, not as a user tax and just on people being married, the people getting married. Thank you. You'll have a chance to reply. Thanks. Thank you. You wish to argue? Thank you, and may it please the Court, Michael Skodro from the Office of the Illinois Attorney General here on behalf of the defendants' apologies. I do want to address the strict scrutiny versus rational basis issue, but I think at the outset there's something critical that needs to be addressed here, and that is the proper characterization of this act. I think that many of the arguments that are being advanced proceed from a false premise, and that is that this act rests on a presumed correlation solely between domestic violence and marriage, the correlation that was addressed by the Court of Boynton and before that in Crocker. But that isn't the case. What this law quite clearly does, this is the General Assembly's recognition that the act of marriage itself creates legal impediments that make it more difficult to extricate oneself from an abusive relationship. And those aren't limited to the legal issues that are listed in the statute, namely invalidity of marriage, dissolution, separation. All of those, to be sure, instantly apply when you receive your marriage license and get married. The state itself, the law itself, that works perfectly well in most cases, actually creates hurdles for the person wanting to extricate themselves. Now plaintiffs point out that there are other things listed in the statute beyond those three, but think about child custody, for example, and visitation. Well, those two are not neutral as between the married and the unmarried. The Parentage Act, for example, presumes paternity on the part of a father of a child who is born in wedlock, not so for someone who is born out of wedlock. Visitation, as the Illinois Supreme Court made clear in the John M. decision a few years ago, is more difficult for someone who was not married to the mother when the child was born. So in all aspects, what the General Assembly has recognized here is not merely that there may be some relationship between marriage and domestic violence, and that is indeed the relationship that plaintiffs have challenged in their complaint, in their briefs, and again today at oral arguments. But this is the point. The relationship the General Assembly recognized is that Illinois law itself, by operation of law, and again it works perfectly well and is perfectly reasonable in other contexts, actually serves to create additional hurdles that make it harder for someone to extricate themselves from an abusive relationship. So your opponent thinks in their briefs indicate that they believe that this statute is under-inclusive. Correct, Your Honor, and I think that is their claim. How is it not under-inclusive? Time and again, the Illinois Supreme Court, the U.S. Supreme Court, decisions like the 1989 decision in Potts from the Illinois Supreme Court have made clear that the General Assembly is permitted to attack vital social issues piecemeal and to address the worst problems first. And I think while there is no doubt that domestic violence is a problem in our society and that it extends to people who are not married, what the General Assembly recognized here, and they're perfectly free to address what they believe is the most problematic aspect, is that the law itself was unfortunately making it harder for people to extricate themselves. And so they quite reasonably chose to narrowly address that. And that's why, because that's the relationship that's at issue here. The other comments that are made about how the fit is improper and how we wouldn't survive rational basis, much less strict scrutiny, all go by the board. Indeed, as the circuit court correctly held, given that that's the relationship at issue, this law is perfectly tailored. The $5 fee is assessed on the very document that, by issuance, is triggering the initiation of these legal impediments that make it more difficult to extricate oneself from an abusive relationship. It's perfectly tailored. It is spot on. And that's what the circuit court recognized. And I would especially commend pages 830 and 831 in the appendix, where the circuit court develops that point even further and elaborates upon it, that that really is what the General Assembly was doing here. They recognized that there were problems specific to married people, problems that arise and sometimes confront non-married people, but in a different way. They also recognized the problem with the last bill, which was over-inclusive, correct? That's correct, Your Honor. In a sense, there's a wind ahead of both ways, where that was too broad, this is too narrow. This perfectly targets a pressing problem that the law itself was creating hurdles for people, and that's precisely what this is aimed at and why there's no question that it satisfies strict scrutiny. Now, I'm very happy to address why Boyden doesn't require this court to apply strict scrutiny, and I think some of those issues have already been touched upon by Your Honor's questions this morning. Boyden relies upon the U.S. Supreme Court's decision in Zablocki, and that's the standard that Your Honors were discussing a moment ago. It requires a direct and substantial burden on a fundamental right before strict scrutiny applies. Well, there's clearly, they've made an argument that it's a direct burden, insofar as this is a fee that is attached to the marriage license. But assuming that's correct, that it's direct, it hasn't satisfied the substantiality requirement, and what, in a sense, their briefing has done is collapsed the two and argued that so long as it's direct. When would it become substantial? I'm sorry, Your Honor? At what point would it become substantial? Well, we clearly have the sense from Boyden that $25 out of $40 was deemed substantial, whether as a proportion of the $40 or not. Now, I will say that part of Boyden itself was dicta. The Court at that point had clearly decided prior to those paragraphs that it failed rational basis. Again, because a different relationship was at issue, the general relationship between domestic violence and marriage, not the relationship we're talking about here. So you would be asking us to conclude that if $25 out of $40 is substantial, that $5 out of $75, I believe, is not, and anything in the middle is left for another day? Yes, Your Honor, with the following caveat. I don't think I would want to be saying today, because that was dicta that $25 out of $40 is. I think that would be a closer case, to be sure. But unfortunately, or fortunately, like so many aspects of the law, substantial burden does require a case-by-case analysis, and I would commend to the Court the First District's 2001 decision in Rose on this point. We cite Rose in our brief. Rose was a challenge to the $10 fee that was assessed on all civil filings, and that $10 went to the arbitration fund. And the lawsuit was filed, I believe it was on behalf of a putative class, but one of the plaintiffs in that case had been assessed and had paid the $10 fee for a dissolution of marriage filing. And so the claim was raised that, as in Crocker, there was an impediment, a direct impediment, on that individual's fundamental right to dissolve his marriage relationship. And what the Court held, and Boynton was cited, and what the Court held is the concluding paragraphs of the decision in Rose, is that, no, it may, whether it's direct or not, isn't substantial. And the words the Court used there was, to be substantial, it requires a total ban. It would have to prohibit people in the way, pardon me, in the way Zablocki prohibited people from receiving the benefit of their fundamental right. And that's why I don't want to concede on $25, because the U.S. Supreme Court, and again, Boynton was very clear that it intended to be following U.S. Supreme Court precedent, as opposed to developing a separate Illinois standard. It cites Zablocki for the direct and substantial requirement. But if you look at Zablocki, Zablocki goes out of its way. That was clearly a direct impediment. Recall Wisconsin's statute in that actually provided that you could not get married without a judge's approval if you had children that you were supporting that were not in your custody. So you, and you had either back child support, still do, as the plaintiff did in Zablocki, or if you couldn't establish that those children were not and would not become wards of the state, a tremendous burden that in fact, of course, wiped out an entire class of people and their ability to wed. And what Zablocki does, even though that is clearly a direct impediment, it took the substantially half of that standard very, very seriously. The court goes on to explain that it goes into detail as to how this would ban a number of people from getting married. And then in footnote 12 of Zablocki, the court takes pains to distinguish its prior decision in Califano, which is a case where this same claim was rejected. And there the court said, unlike in Califano, here people are absolutely prevented from getting married. That's the court's language, and that's the manner in which the court distinguished Califano. So I don't want to say that $25 would be substantial. I think the U.S. Supreme Court has set the bar extraordinarily high on what it requires to be a substantial burden, even in cases where it is clearly a direct burden, before strict scrutiny is triggered.  Thank you, Your Honor. On the uniformity clause, I'm happy to address that briefly. If you have the uniformity clause, if the tax is constitutional under the uniformity clause, then necessarily flows, it's proper under the equal protection clause, correct? Correct, Your Honor, under the rational basis standard of equal protection, absolutely. The Illinois Supreme Court has made clear that the uniformity clause is a slightly higher, clearly it's not strict scrutiny, but it is slightly higher than the rational basis standard, though as articulated, they sound similar in terms of their articulation, oftentimes with, you know, the Gay House Café and Ehrenbold and others, depicting that we need a real and substantial difference in a reasonable relation to the object and the public policy, and as an evidentiary matter, the state, for uniformity purposes, need only propose or explain its reasonable justification, as we have done here in terms of the need to overcome legal impediments to extricating oneself from an abusive relationship, and certainly have done that here, and they would then have to come back and explain why that's unreasonable. I am reminded of one point, if the Court has no further questions on the uniformity clause, I am reminded of a point that was made in the briefing, though I think not here in argument today, regarding the claim that the Marriage Act could be read such that, or our current Act, Section 6Z72, that's the issue here, could be read to provide services for people who were married and divorced 15 years ago, and only today are abused by someone different, and therefore would qualify for legal protections under the statute of legal services, and that therefore it's over-inclusive. Or that it could provide for people who've been married in another state and then come into this state. Yes, both of those claims are made. I'll address them in turn. As to the first, that, in my view, is not the easiest reading of the statute. Certainly, at best, it may be ambiguous. The purpose of the statute is quite clearly to protect people whose spouse or former spouse is the abuser. That is the construction the circuit court assigned on page 832 in the appendix, the circuit court reason. It applies to people who are married or were married to their abuser. Certainly, on behalf of the defendants, that's a limiting construction if one is needed. With respect to a former spouse, would the funding only be available for issues regarding visitation, custody? The funding would be visitation, custody, and it goes on to say, I mean, certainly, if there were an order of protection that were required. Order of protection, but not a subsequent divorce proceeding unrelated to the abusive spouse. That's my understanding. That's correct, Your Honor. That's exactly right. The proceedings, the protections that are here, to make sure I understand Your Honor's question, the protections that are here apply only if the person is litigating with the abusive spouse, whoever that might be. Exactly, Your Honor. And the Illinois Supreme Court has certainly said time and again that if the courts have a duty to assign limiting constructions, should they be necessary to render a statute constitutional? I think that's clearly the intent on the face of the statute. I'm not even sure I'd go so far as to call it a limiting construction, but certainly on behalf of the defendants, that would be a construction that we believe is proper. That is, that it applies to those people. And, again, it's the construction that the circuit court felt very comfortable assigning on page 832. As to out-of-state, I'm not aware that they have cited any authority for the proposition that a statute becomes irrational or unreasonable or even fails strict scrutiny because out-of-state folks are denied coverage. If you think about someone from Wisconsin driving into Illinois briefly and having a roadside accident, undoubtedly, although they don't pay taxes in Illinois, the state sheriff would provide them services in the event of such an incident. That being said, and for all we know, I should add, this person may have paid into a similar fund in their own state when they received their marriage license. I simply don't see a way in which a statute becomes irrational because out-of-state they have purchased. We can only control what Illinois is doing, obviously, and so I think that is fairly covered, and I don't know how that could defeat a rational basis or strict scrutiny that someone isn't denied coverage because they purchased into the program outside of the state. I'd like to go back to the uniformity clause for just a moment and ask you, if you could, tell me why a 2615 is appropriate at all as a way to resolve a question where, in other words, where the person who paid the tax here, the plaintiff, raises a good faith basis. Is this really appropriate for a 2615 resolution? We believe it is, Your Honor. We've cited cases in which the court has resolved these on 2615, whereas here it is simply so as the burden. You're exactly right. They come forth with a good faith argument. We have taken for sake of argument as true that they have advanced a good faith argument on that issue and have therefore responded with the state's burden, which is to provide justification for the law. We have certainly done that. At that point, it's their burden to return with reasons why this doesn't satisfy what Gahaz calls the minimum standard of reasonableness and fairness, bearing in mind Ehrenbold's further admonishment that you can tax even a narrow group for a general welfare program, something this is not. When something is so clearly off the mark as a uniformity clause challenge in light of Gahaz and Ehrenbold and indeed this Court's recent decision in Rostrowski, if I'm pronouncing the case decision in 2010, in light of those principles, as a matter of law, there's simply a failure here because clearly there is a tight and compelling fit here between the need to remedy and help people overcome the additional legal hurdles they face once they're married, hurdles that don't exist or don't exist to the same extent for the unmarried. So your position is your justification in the scheme of a 2615 analysis is that, as a matter of law, this is not a factual question. This is, as a matter of law, the Court can look at that and appropriately rule on a 2615. Yes, Your Honor. Okay. Did you have any other questions? Well, based upon that question, isn't it more apt to be either a motion for summary judgment if we're talking about the facts are undisputed and, as a matter of law, judgment should be rendered in your favor rather than a 615, which basically says they fail to state the cause of action? I see, Your Honor. Again, in line with the cases cited in our opening brief or our only brief, here where they're simply not able even to articulate something or allege something that would be, that would satisfy the, you know, requirement of minimums that are of reasonableness and so on, a 615 seems appropriate here. There really isn't a contest, as I can tell, a factual dispute so much as they've tried to articulate something, but it simply fails as a matter of law. Was there any additional facts presented during argument on the motion other than what was pledged? Not that I'm aware of, Your Honor, from reviewing the transcripts, and my opposing counsel will undoubtedly correct me if that's inaccurate, but from reviewing the March and then the subsequent transcripts of the proceedings on the two 615 motions, there was an initial dismissal, repleting, and then a new dismissal. I'm not aware that additional facts were presented. Are you aware that there may or may not have been an objection raised that the 615 might have been the inappropriate mode to obtain a dismissal of prejudice? Well, and that issue has been briefed, Your Honor. I mean, obviously there is, there was a dispute over that question, but again, in line with the authorities that we presented, we think that as a matter of law here, the claim simply fails in the 615. This seems somewhat contradictory. I mean, if on one hand, in order for the analysis to go forward, we assume the plaintiff made a good faith claim. Is that or is that not synonymous with at least the bare bones of, not saying he's going to prevail, but in terms of the 615, isn't that the bare bones of a cause of action? I mean, do you see the dichotomy here? I do, Your Honor, but the ultimate burden remains on the plaintiff, and, you know, even in other burden-shifting scenarios like Title VII, I mean, if they're simply unable to advance something that... I see your point. Sure. But if it's a good faith basis to go forward, isn't that in and of itself a statement of a cause of action? Oh, I, so... You see what I'm saying? So on one hand, we're saying, all right, all the plaintiff has to do is show a good faith basis to go forward. Right. And then when we look at it from another perspective, we're saying, well, that's not a cause of action. It would seem to me either it is or it isn't. Mm-hmm. But this is based, framed solely on a facial challenge. It is solely a facial challenge. And thank you, Your Honor. That is actually a critical point. It is solely a facial challenge. And so, yes, that was sort of, you're exactly right. It's a facial challenge here under the standards set forth by the Illinois Supreme Court for those challenges. There's no doubt that they would have to advance something beyond the facts particular to this specific plaintiff. There has to be a broad-based attack on the statute and show that it's unreasonable in all applications. If the Court has no further questions. Thank you very much. Thank you very much. Thank you. I have three points, I believe, to rebut. The first is on the issue of direct and substantial. We clearly say that it's direct because they are required to pay it. But it's also substantial under in Boynton at page 214 that the Supreme Court held. Once it's conceded that the Court has the power to impose a special tax on marriage license, that is to single out a marriage for a special tax consideration, there is no limit on the amount of the tax that may be imposed. So the Court, I think that there's a controlling decision that the amount is not just direct, but the principle of putting that tax on is substantial because it's a fundamental, because it attacks a fundamental right to get married. But it may affect the constitutionality or may significantly impede the right to marry in the future if the tax goes up. But don't we have to look at it as it is right now at $5 based upon Nableton? Any fee, it would be direct and substantial because the fees that are imposed on marriage are related to the costs of, this is not a challenge in the filing fee for a marriage license. The fees, the tax that goes to keeping the marriage records would be, are not challengeable under the rational basis that there's a reason for doing them and that's not a challenge. That's the difference between a fee and a tax. Sure, this is. The fee is what goes to the clerk for purposes of processing, printing, whatever, licenses. Right, keeping the records. Keeping the records. This is a tax. This extra $5 is a tax and it's sequestered from the get-go. That's right. And the other two cases, the Boyd and Cracker really make the point at the beginning of both of them that it is a tax rather than a fee. And so just I can clarify in my own mind, it's your position that any amount is substantial. That's right. And it's based upon the claim that if it can be taxed a penny, it can be taxed a pound. That's exactly what the court says. The second issue that I wanted to raise was regarding the uniformity clause. The case that the State has raised about Rose was related to an arbitration fee imposed on people filing. They raised the issue of a divorce, but however, that case was decided, it was not based on the strict scrutiny. That was a rational basis test. That arbitration fee was imposed on cases, maybe in Chancery Court, which were not eligible for arbitration, like class actions couldn't be arbitrated or things in Chancery Division that are not in Law Division that couldn't be arbitrated. And so to say that it related, it triggered, there wasn't really a strict scrutiny analysis. It may have been in the case, but that's dictative. The main issue there was related to, it was decided essentially on a rational basis test. Looking at the uniformity clause, the class has to be reasonable, correct? And in this case, the class being married people. And the subjects in each class have to be taxed uniformly, which we have that here. They're all taxed $5, correct? Under the uniformity clause, there are two parts. And the one is the real and substantial differences between those taxed and not taxed. And then the other element is that it also has to be a reasonable relationship. And it's a broader protection as well than the equal protection clause. We argue, we do talk about it's over-inclusive, it's under-inclusive. It's very confusing. I mean, someone who is formally married and is now divorced and is now living with someone and now goes to use those services, perhaps they would be, under the reading of it, would be included. We think that the equal protection claim here would also go to the fact that someone who is not married would need these kinds of services. That's really the core of that equal protection claim. Someone who is not married would need these services as well. What's your response to your opponent's argument that people who are in a marriage have a very hard time extricating themselves from a marriage based upon having children or the institution of marriage, if you will, versus somebody who is not married and they can maybe walk away a little bit easier? Thank you. I think that, first of all, I think that that was not directly raised in the briefs and it's a new argument here. But the fact that there are new hurdles, that the state itself creates new hurdles, the issue here is that this is still, the issue, the context is that this is still a social welfare program. Then it should still be reviewed in the same way on a rational basis or on strict scrutiny. It's just, it's still a welfare program. It doesn't make a difference that the state has created new hurdles when you're getting married. Lots of programs might have lots of implications. I'll give you a moment to just sum up and make sure your time is up. Thank you. We would just, I would just, you asked, your questions touched upon my other two points that I wanted to raise. We would just ask the court to reverse the circuit court and remain in case. Thank you. Thank you, gentlemen. Thank you. We'll be in recess until 9.30.